IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 03-0464 

════════════
 
In re E.I. 
DuPont de Nemours and Company
 
 
════════════════════════════════════════════════════
On Petition for Writ of 
Mandamus
════════════════════════════════════════════════════
 
 
PER CURIAM
 
In 
the suit underlying this petition for mandamus, nearly 400 plaintiffs sued E.I. 
DuPont de Nemours (ADuPont@) 
and over 100 other defendants for alleged asbestos-related injuries from 1935 to 
the present.  In response to the 
plaintiffs= 
discovery request, DuPont asserted claims of attorney-client and/or work product 
privilege with respect to 607 documents.  

On 
May 12, 2003, the trial court issued an order requiring DuPont to turn over most 
of the documents, ruling that DuPont had not made a prima facie showing of 
privilege.   A divided court of 
appeals declined to grant mandamus relief.   __S.W.3d__.  
DuPont now seeks relief from this Court.  DuPont contends that the trial court 
abused its discretion by holding a hearing on the plaintiffs= 
global challenge to all of the documents identified in its privilege log.  DuPont further argues that the trial 
court abused its discretion by finding that DuPont had not made a prime facie 
showing of privilege for the documents at issue and refusing to conduct an in 
camera inspection of the documents before rejecting its privilege claims. 

The 
court of appeals declined to grant DuPont mandamus relief.  We agree with the court of appeals that 
the trial court did not abuse its discretion in holding a hearing on the plaintiffs= 
global challenge to DuPont=s 
privilege claims.  However, we 
conditionally grant the writ insofar as we conclude that DuPont made a prima facie showing of privilege for many of the 
approximately 530 documents that the trial court ordered produced without 
conducting an in camera review.           

In 
response to plaintiffs= 
requests for production, DuPont produced over 55,000 pages of documents that go 
back more than 60 years.  However, 
DuPont stated that it was withholding 607 documents, citing the attorney-client 
privilege found in Texas Rule of Evidence 503 and the work-product privilege set 
forth in Texas Rule of Civil Procedure 192.5.  After the plaintiffs requested a 
privilege log,[1] 
DuPont timely served the log describing the documents withheld.  The plaintiffs then requested a hearing 
challenging DuPont=s 
privilege claims for all of the documents.  
In response, DuPont filed an affidavit from its paralegal Walter Connor 
in support of its privilege claims and tendered the documents listed on the 
privilege log to the court for in camera inspection.  In his affidavit, Connor stated, in 
relevant part:
 
I 
have reviewed all names listed on the DuPont-Brignac 
privilege log that are identified as ADuPont 
Legal.@  I compared each ADuPont 
Legal@ 
name for each document on the privilege log with a DuPont human resources 
database for the legal department.  
Each name that is identified as ADuPont 
Legal@ 
on the privilege log is a name of a person who was, at the time indicated on the 
document, a DuPont attorney or DuPont paralegal as confirmed by the comparison 
with the human resources database.
 
Connor 
further averred:
 
I 
have reviewed and am familiar with the definitions of client, representative of 
client, lawyer, representative of a lawyer, and confidential as defined in Rule 
503 of the Texas Rules of Evidence.  
Based on my review of the DuPont human resources 
database for the legal department, the documents listed on the DuPont-Brignac privilege log, and the definitions in Rule 503, all 
the documents on the DuPont-Brignac privilege log with 
ADuPont 
Legal@ 
names associated with a claim of attorney-client privilege indicate a lawyer or 
a representative of a lawyer engaging in confidential communications with a 
client or a representative of a client regarding professional legal services, or 
a lawyer or representative of a lawyer rendering professional legal services or 
performing a requested task for a client or a representative of a client 
involving the rendering of professional legal services.
 
Finally, 
Connor also stated:
 
I have reviewed and am familiar with the definition of Awork 
product@ 
as defined in Rule 192.5 of the Texas Rules of Civil Procedure.  Based on my review of 
the DuPont human resources database for the legal department, the documents 
listed on the DuPont-Brignac privilege log, and the 
definitions in Rule 192.5, all the documents on the DuPont-Brignac privilege log with ADuPont 
Legal@ 
names associated with a claim of work product indicate material prepared or 
mental impressions developed in anticipation of litigation or for trial by or 
for DuPont or its representatives, or a communication in anticipation of 
litigation or for trial between DuPont and its representatives or among its 
representatives.
 
On 
April 29, 2003, the court conducted a hearing on DuPont=s 
assertions of privilege.  The court 
overruled DuPont=s 
claims of privilege except as to 76 documents, which were 
ordered to be delivered for in camera review.   The trial court excepted those 76 documents listed on the privilege log that 
were associated exclusively with members of ADuPont 
Legal,@ 
meaning that the author, recipient, and all parties that received copies of the 
document were members of ADuPont 
Legal."  The trial court ordered 
DuPont to produce the remainder of the documents, consisting of: 1) documents 
with no "DuPont Legal" names associated, and 2) documents with both "DuPont 
Legal" and non-ADuPont 
Legal" names associated.     

The 
parties do not dispute that mandamus relief is generally available in this type 
of case.  Mandamus relief is 
appropriate Ato 
correct a clear abuse of discretion or the violation of a duty imposed by law 
when there is no other adequate remedy by law.@  Johnson v. Fourth 
Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985).  A[A] 
clear failure by the trial court to analyze or apply 
the law correctly will constitute an abuse of discretion and may result in 
appellate reversal by extraordinary writ.@  Walker v. Packer, 
827 S.W.2d 833, 839 (Tex. 1992).  Mandamus is proper when the trial court 
erroneously orders the disclosure of privileged information because the trial 
court=s 
error cannot be corrected on appeal.  Id. at 
843.  As DuPont would lose 
the benefit of the privilege if the documents at issue are disclosed, even if its assertions of privilege were later 
upheld on appeal, we conclude that this Court may provide mandamus relief in 
this case.            

The 
party who seeks to limit discovery by asserting a privilege has the burden of 
proof.  Jordan v. Fourth Court of 
Appeals, 701 S.W.2d 644, 648‑649 (Tex. 1985).  However, if a party asserting privilege 
claims makes a prima facie showing of privilege and tenders documents to the 
trial court, the trial court must conduct an in camera inspection of those 
documents before deciding to compel production.  Arkla, Inc. v. 
Harris, 846 S.W.2d 623, 631 (Tex. App.n 
Houston [14th Dist.] 1993, orig. proceeding); Shell Western E & P, Inc. 
v. Oliver, 751 S.W.2d 195, 196 (Tex. App.nDallas 
1988, orig. proceeding).  We have recognized:
 
Generally, 
a trial court conducts an in camera inspection to determine if a document is in 
fact privileged. If it is not privileged, then it may become evidence that the 
factfinder may consider.  If the document is privileged, it is not 
subject to discovery and may not be considered by the 
factfinder, even when the factfinder is the trial court.
 
Goode v. Shoukfeh, 943 S.W.2d 441, 
448 (Tex. 1997).  The trial 
court abuses its discretion in refusing to conduct an in camera inspection when 
such review is critical to the evaluation of a privilege claim.  State v. Lowry, 802 S.W.2d 669, 
673‑74 (Tex. 1991); Loftin v. Martin, 776 
S.W.2d 145, 148 (Tex. 1989); Thibodeaux v. Spring Woods Bank, 757 
S.W.2d 856, 860 (Tex. App.nHouston 
[14th Dist.] 1988, no writ);  
Shell Western E & P, 751 S.W.2d at 196.
The 
prima facie standard requires only the Aminimum 
quantum of evidence necessary to support a rational inference that the 
allegation of fact is true.@  Tex. Tech Univ. 
Health Scis. Ctr. v. Apodaca, 876 
S.W.2d 402, 407 (Tex. App.nEl 
Paso 1994, writ denied).  The 
documents themselves may constitute sufficient evidence to make a prima facie 
showing of attorney-client or work product privilege. Weisel Enters., Inc. v. 
Curry, 718 S.W.2d 56, 58 (Tex. 1986).[2]  
The 
plaintiffs argue that Connor=s 
affidavit is lacking in specificity.  
However, an affidavit, even if it addresses groups of documents rather 
than each document individually, has been held to be sufficient to make a prima 
facie showing of attorney-client and/or work product privilege.  See In re Toyota Motor Corp., 94 
S.W.3d 819 (Tex. App.nSan 
Antonio 2002, orig. proceeding); In re Monsanto Co., 998 S.W.2d 917 (Tex. 
App.nWaco 
1999, orig. proceeding); In re Valero Energy Corp., 973 S.W.2d 453 (Tex.App.nHouston 
[14th Dist.] 1998, orig. proceeding); Shell Western 
E & P, 751 S.W.2d at 196.  

In 
Monsanto, the affidavit of the corporate representative asserted that a 
log of 117 documents involved Ain-house 
and/or outside attorneys for Monsanto, or other Monsanto employees, 
representatives or agents.@  In re Monsanto 
Co., 998 S.W.2d at 927.  
The court of appeals held that this representation constituted a prima 
facie showing of the attorney-client and work product privilege.  Id.  In Toyota, the affidavit 
submitted by the defendant stated that one group of documents consisted of A[c]ommunications to Toyota counsel for the purpose of 
requesting legal advice or facilitating the rendition of professional legal 
service.@  In re Toyota Motor 
Corp., 94 S.W.3d at 821.  
This representation was also found to be 
sufficient to establish a prima facie case of privilege.  Id. at 
823-24.  In Shell Western 
E & P, Shell established a prima facie case of attorney-client privilege 
where a Shell affiant swore that the Adocuments 
. . . were written by a lawyer to a client@ 
and Aconsist 
of communications from a client to a Shell . . . lawyer . . . .@  Shell Western E & P, 
751 S.W.2d at 196.        However, an 
affidavit is of no probative value if it merely presents global allegations that 
documents come within the asserted privilege.  Ryals v. Canales, 767 S.W.2d 226, 229 
(Tex. App.nDallas 
1989, orig. proceeding).  The 
plaintiffs contend that the affidavit at issue here is not probative because it 
is conclusory.  
The plaintiffs maintain that Connor=s 
affidavit is indistinguishable from the affidavit found insufficient to support 
attorney-client privilege in In re 
Temple-Inland, Inc., 8 S.W.3d 459 (Tex. App.nBeaumont 
2000, orig. proceeding).  However, 
the affidavit in Temple-Inland that was found to 
be conclusory merely stated that production Awould 
violate the attorney-client privilege.@  Id. at 
462.  Connor=s 
affidavit more closely resembles the affidavits in Monsanto and 
Toyota, as it sets forth the factual basis for the applicability of the 
attorney-client and/or work product privileges to the documents at issue.  Additionally, while Connor did not 
attest to the specific contents of each of the 607 documents at issue, the 
plaintiffs are unable to identify any such legal requirement and do not dispute 
that the log submitted by DuPont contains a summary of each document.  Thus, we find that the specificity of 
Connor=s 
affidavit and the log taken together are reasonably adequate to establish a 
prima facie case of privilege given that the documents at issue go back more 
than 60 years. 
The 
plaintiffs also contend that Connor=s 
affidavit is not probative because it is not based on 
personal knowledge.  For an 
affidavit to have probative value, an affiant must swear that the facts 
presented in the affidavit reflect his personal knowledge.  Humphreys v. 
Caldwell, 888 S.W.2d 469, 470 (Tex. 1994).  Connor swore that his statements were based on his Apersonal 
knowledge of the facts stated in the affidavit.@  Even though Connor later explained that 
his determinations were A[b]ased on [his] review of the DuPont human resources database 
for the legal department,@ 
an affiant=s 
acknowledgment of the sources from which he gathered his knowledge does not 
violate the personal knowledge requirement.  See Grotjohn Precise Connexiones Int'l v. JEM Fin., Inc., 12 S.W.3d 859, 866 
(Tex. App.nTexarkana 
2000, no pet.).  Therefore, we hold 
that Connor=s 
affidavit satisfies the personal knowledge requirement.
Three 
discrete categories of documents are in dispute.  First, there are the documents which have only ADuPont 
Legal@ 
names associated with them.  The 
trial court ordered an in camera review of these 76 documents.  Second, there are those documents that 
have both ADuPont 
Legal@ 
and other names associated with them.  
The trial court denied DuPont=s 
claim of privilege with respect to these documents without ordering an in camera 
review.  Finally, there are those 
documents which do not have any ADuPont 
Legal@ 
name associated with them.  The 
trial court also rejected DuPont=s 
claim of privilege concerning these documents.
We  conclude that 
the trial court did not abuse its discretion in sustaining DuPont=s 
privilege claims with respect to the first category of documents.  The log submitted by DuPont combined 
with Connor=s 
affidavit clearly make a prima facie case that those documents with only ADuPont 
Legal@ 
names associated with them are covered by the attorney-client and/or work 
product privileges.  Consequently, 
the trial court correctly determined that DuPont was entitled to at least an in 
camera review of those documents.
We 
also conclude that DuPont established a prima facie case of privilege with 
respect to the second category of documents, which contained both ADuPont 
Legal@ 
and other names.  Thus, we find that 
the trial court erroneously rejected DuPont=s 
privilege claim as applied to these documents without at least subjecting them 
to an in camera review.  

There 
is no presumption that documents are privileged, and there is no presumption 
that a party listed on the privilege log is an authorized person under the rule 
governing the privilege.  Cigna 
Corp. v. Spears, 838 S.W.2d 561, 565-66 (Tex. App.nSan 
Antonio 1992, orig. proceeding).  
Nevertheless, Connor provided sufficient indication of the relationship 
between the ADuPont 
Legal@ 
and the non-ADuPont 
Legal@ 
persons on the privilege log to establish a prima facie case of privilege.  In his description of the allegedly 
privileged documents, Connor identified the non-ADuPont 
Legal@ 
persons on the privilege log as authorized parties for purposes of 
attorney-client and/or work product privilege.  Connor swore that the documents 
allegedly privileged as attorney-client materials Aindicate 
a lawyer or representative of a lawyer engaging in communication . . . or 
performing a requested task . . . for a client or representative of a 
client.@  The implication of this statement is 
that, whatever the relationship between the ADuPont 
Legal@ 
and the non-ADupont Legal@ 
parties listed on the privilege log, it was a relationship within the scope of 
the attorney-client and/or work product privilege.  In light of the tests for demonstrating 
attorney-client and work product privilege[3] 
and the fact that the hundreds of documents at issue span more than 60 years, 
this statement combined with the log summarizing each document is sufficient to 
establish at least a prima facie case of privilege that is then subject to in 
camera review.[4]  Because DuPont has established a prima 
facie case of privilege as to the second category of documents, which bear both 
ADuPont 
Legal@ 
and non-ADuPont 
Legal@ 
designations, we conclude that it was entitled to an in camera review before 
being required to produce these documents. 
Finally, 
we agree with the trial court that DuPont has not established a prima facie case 
of privilege with respect to the third category of documents containing no ADuPont 
Legal@ 
names.  Connor=s 
affidavit offers no evidence to justify privilege assertions concerning these 
documents.  Connor=s 
affidavit attested to the privileged nature of A[a]ll the documents on the DuPont-Brignac privilege log with >DuPont 
Legal= 
names associated with a claim of attorney-client privilege@ 
and A[a]ll the documents on the DuPont-Brignac privilege log with >DuPont 
Legal= 
names associated with a claim of work product privilege.@  The affidavit was silent as to any claim 
of privilege regarding the documents that do not bear a ADupont Legal@ 
name.  Accordingly, we agree with 
the appeals court that the trial court did not abuse its discretion in ruling 
that DuPont failed to make a prima facie case of privilege with respect to those 
documents containing no ADupont Legal@ 
names.
DuPont 
also argues on appeal that the plaintiffs= 
global challenge to their privilege claims was not sufficient to place those 
claims at issue.  DuPont contends 
that the trial court abused its discretion by allowing a hearing based on the 
plaintiffs= 
global challenge to DuPont=s 
entire privilege log.  DuPont 
maintains that, prior to the hearing, the plaintiffs 
should have been required to particularize their objections to specific 
documents in the privilege log.  

DuPont 
cites two cases in support of its argument.  First, DuPont references In re Carbo Ceramics, Inc., 81 S.W.3d 369 (Tex. 
App.nHouston 
[14th Dist.] 1988, orig. proceeding), but this case is inapposite.  In Carbo, the court found that the plaintiff 
Adid 
not challenge the privileged nature of all privileged documents,@ 
but instead placed only one letter at issue.  Id. at 
375.  Carbo is distinguishable because it is not disputed here that the plaintiffs challenged the 
privileged nature of all documents in the log.  DuPont also relies on Monsanto, 
which held in part:
 
When 
the party asserting a privilege has made a prima facie case for its claim, the 
requesting party has the burden to point out to the court which specific 
documents or groups of documents it believes require inspection. Otherwise, 
trial judges will be required to inspect untold numbers of documents. The 
requesting party should be in a position to do so based upon (1) the contents of 
the privilege log, (2) other discovery and documents, (3) discovery specifically 
designated to test the claim of privilege, and (4) the evidence at the 
hearing.  
 
In re Monsanto Co., 998 S.W. 2d at 925.
It 
is clear that Monsanto stands only for the proposition that  the party 
seeking discovery must specify its challenges to the privilege log after the 
party asserting privilege claims has made a prima facie case.  The discovery rules provide that any 
party may request a hearing on a claim of privilege and the party asserting the 
privilege must present any evidence necessary to support the privilege. Tex. R. Civ. P. 193.4(a).  This provision does not contain a 
requirement that the party seeking discovery specify their rationale for 
objecting to each document before requesting a hearing.[5]  Accordingly, the trial court did not 
abuse its discretion by holding a hearing on the plaintiffs= 
objection to DuPont=s 
privilege log, which challenged whether DuPont had established a prima facie 
case of privilege for all of the documents it withheld. 
For 
the foregoing reasons, we conditionally grant DuPont=s 
petition for mandamus relief from the trial court ruling insofar as the ruling 
denied DuPont=s 
privilege claim without conducting an in camera review with respect to the 
documents containing both ADuPont 
Legal@ 
and non-ADuPont 
Legal@ 
names.  Accordingly, pursuant to 
Texas Rule of Appellate Procedure 52.8 and without hearing oral argument, we 
direct the trial court to vacate in part its May 12, 2003 order and to conduct 
further proceedings consistent with this opinion.  We are confident that the trial court 
will promptly comply, and our writ will issue only if it does 
not.
 
OPINION 
DELIVERED: May 14, 2004




[1] A 
Aprivilege 
log@ 
is the commonly used term for a response pursuant to Texas Rule of Procedure 
193.3(b) that: A1) 
describes the information or materials withheld that, without revealing the 
privileged information or otherwise waiving the privilege, enables other parties 
to assess the applicability of the privilege, and 2) asserts a specific 
privilege for each item or group of items withheld.@  The dissenting court of appeals opinion 
noted:
 
The 
log is sufficiently detailed for the real parties in 
interest to assess the applicability of the specific privilege being asserted. 
See Tex. R. 
CIV. P. 193.3(b). For example, ADUP 
Bates Range 0903484‑3484, Date 741029,@ 
a document from AAustin 
RE (DuPont Legal)@ 
to AMfg 
Environmental Committee,@ 
copied to ABonczek RR (DuPont Legal); Galloway WR; Helmers EN; Hildrew JC; Meany DM; Reichert RJ; Schmutz JF 
(DuPont Legal), and Sebree DB (DuPont Legal),@ 
is a AMemo 
between DuPont counsel requesting legal advice and comments re: proposed 
amendments to regulations concerning  
national emissions standards for hazardous air pollutants.@  
__S.W.3d__.  Neither the trial court nor the court of 
appeals majority opinion concluded that the log inadequately described the 
documents and the plaintiffs do not so argue in this court.   

[2] The dissenting court of appeals opinion examined 
several of the memos that were among the documents containing both ADuPont Legal@ and non-ADuPont Legal@ names.  
Both the ADuPont Legal@ names and the names without designation are written with the first and middle initials before the 
last name.  The identical format of 
the two types of names and the inclusion of each 
recipient=s 
middle initial suggest all of the recipients were DuPont employees.  Some recipients of these memos appear to 
have been groups, such as ADept Occ Health 
Mgrs@ and AAsbestos Committee.@  This 
illustrates the additional evidence that may be adduced through an in camera 
review.  


[3] Connor did not specifically assert that each recipient 
was  a 
DuPont supervisor.  However, for 
attorney-client privilege, the subject matter test has replaced the control 
group test pursuant to the amendment of Rule of Evidence 503.  Tex. R. Evid. 503(a)(2) & cmt; 
Nat=l Tank Co. v. Brotherton, 851 S.W.2d 193, 197‑98 (Tex. 1993).  The subject matter 
test is met where Athe 
employee makes the communication at the direction of his superiors in the 
corporation and where the subject matter upon which the attorney's advice is 
sought by the corporation and dealt with in the communication is the performance 
by the employee of the duties of his employment.@  
Nat=l Tank, 851 S.W.2d at 198.  
As such, the attorney-client privilege may apply to communications 
between attorneys and employees who are not executives or supervisors.  
The plaintiffs point out that Connor=s affidavit does not exclude the possibility that some 
of the recipients of documents within the second group were not DuPont 
employees.  However, the work 
product privilege is not necessarily waived by 
disclosure to a non-employee, as there are numerous other classes of individuals 
who can qualify.  

"Work product" is defined as:
(1) material prepared or mental impressions developed in 
anticipation of litigation or for trial by or for a party or a party's 
representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; 
or
                              
(2) a communication made in anticipation of litigation or for trial 
between a party and the party's representatives or among a party's 
representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or 
agents.
 Tex. R. Civ. P. 
192.5(a).

[4] Evidence corroborating or rebutting a prima facie case 
of privilege could be found upon in camera review.  The documents themselves may contain 
evidence indicating the positions held by the non-ADuPont legal@ recipients and the extent to which their duties relate 
to the matters upon which legal advice is being 
given.  Plaintiffs are also 
entitled to put on their own evidence on privilege issues.  See Tex. R. Civ. P. 193.4.  For example, plaintiffs could submit 
interrogatories seeking additional information about the individuals listed as 
authors or recipients of disputed documents.  

[5] We hold simply that the trial court did not abuse its 
discretion by holding a hearing.  We 
do not suggest that a trial court would abuse its discretion by requiring, at 
such a hearing or otherwise, that the proponent of the discovery request state 
their objection to the claimed privilege specifically as to each document on the 
privilege log.  Where large numbers 
of documents are at issue, such an approach may promote judicial economy by 
focusing in camera review on those documents where there is a genuine dispute as 
to the application of the privilege and by clarifying the nature of the dispute 
so the court can hone in on the probative content of each 
document.