**INSURANCE COMPANY OF NORTH AMERICA and the American Insurance Company, Relator,**

v.

**Honorable Daniel M. DOWNEY, Judge, 295th District Court, Harris County, Texas, Respondent.**

No. C14–88–01074–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 16, 1989.

Don Fogel, Kenneth M. Morris, W. Mark Cotham, Houston, for relator.

Linda L. Addison, Charles J. Maddox, Jr., Deborah J. Fritsche, William T. Green, III, Ben Taylor, Houston, for respondent.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

JUNELL, Justice.

In this original mandamus proceeding, Insurance Company of North America and The American Insurance Company (collectively "INA") request this court to direct the Honorable Daniel M. Downey to vacate his order requiring INA to produce certain investigation information. INA contends the trial court abused its discretion in ordering it to produce the investigation materials allegedly gathered in anticipation of litigation. We deny the petition for writ of mandamus.

The underlying suit from which discovery is sought involves a contract claim and a bad faith dealing claim under a performance bond. The performance bond was issued by INA to Global Marine, Inc. ("GMI"). GMI owns the Global Marine Drilling Company ("GMDC") which, in turn, owns the Glomar Arctic III, a semi-submersible drilling platform rig. The Bank of America National Trust and Savings Association ("Bank of America"), a real party in interest, participated in financing the construction and delivery of the drilling rig.

GMDC entered into a Bareboat Charter Agreement with GMI under which GMI became the charterer of the Glomar Arctic III. The Bareboat Charter required GMI to make certain monthly payments to GMDC. To secure GMI's payment obligation, GMI purchased a performance bond from INA. GMI later defaulted in its obligations to GMDC under the Bareboat Charter. Bank of America and GMDC sued INA on its obligations under the performance bond alleging breach of contract and breach of the duty of good-faith and fair dealing.

During the course of discovery Bank of America and GMDC requested production of several documents in the files of INA's investigation of the claims involved. INA filed objections to the request asserting the information was privileged and therefore not discoverable. Bank of America requested a hearing on the discoverability of the documents.

Respondent, Judge Downey, set a hearing for October 10, 1988 to hear the INA's objections to production of the investigation materials. Although the hearing was set to hear INA's evidence concerning its claim of privilege, the record does not reflect that INA attempted to submit any evidence at that hearing. INA brought no witnesses to court, nor did it submit affidavits in support of its claim of privilege. Further, INA failed to bring the documents, which it claimed were privileged, to the hearing. The court determined that good cause existed to appoint a Master in Chancery to hear the issues raised by INA's objections. The court appointed William T. Green, III as Master, and empow-

557

ered him to (1) consider the motions for discovery and objections of the parties; (2) review all documents submitted for *in camera* inspection and make written recommendations to the court on the discoverability of documents claimed to be privileged from discovery; and (3) prepare and submit written reports on such other discovery matters as the court may direct.

The Master reviewed the discovery requests and objections and made a written report to the court recommending that the objections to discovery of the investigative material should be overruled because the trial court had previously severed the contract claim from the bad faith claim, thereby making inapplicable the supreme court's decision in *Maryland American General Insurance Co. v. Blackmon*, 639 S.W.2d 455 (Tex.1982). The Master recommended that the trial court order production of the investigative documents in the severed bad faith case. The record before this court fails to show any request by relators for an opportunity to present either to the Master or the court evidence to prove that any documents generated in the investigation of plaintiffs' claims were generated in anticipation of litigation within the provisions of Texas Rule of Civil Procedure 166b(3)(d).

After the Master made his written report to the court, INA filed an instrument entitled "OBJECTION AND REQUEST FOR HEARING ON A CERTAIN RECOMMENDATION OF THE MASTER IN CHANCERY." In that instrument INA alleged that the court's order on the motion for severance was not determinative of the issue concerning applicability of the investigative privilege, at least until there has been a final resolution of the underlying bond claim. In that motion INA requested a hearing "on this issue and the opportunity to submit additional authorities demonstrating that a privilege does not evaporate as a result of a severance." Even at this stage INA failed to offer any evidence to prove its investigative privilege or to register any complaint that the Master had denied INA an evidentiary hearing. Also at this point INA still made no contention that the documents themselves were the only evidence substantiating the claim of

the investigative privilege, and made no request that the court make an *in camera* inspection of the documents. Furthermore, at that time there was no tender of the documents for *in camera* inspection.

We should note that the only time INA mentioned tendering documents for *in camera* inspection was in its Memorandum in Support of Defendants' Objection to Plaintiffs' Request for Production of Documents, served on the Master and opposing counsel on October 25, 1988. In that memorandum INA stated it was prepared to tender any documents for *in camera* inspection as to which defendants had filed any objection, but requested guidance from the court concerning the potential issues before such tendering became necessary. Also it was stated that the organizing and tendering of the documents would be time consuming and difficult.

The trial court accepted the Master's recommendations and ordered INA to produce the documents it claimed were subject to the investigative privilege.

Texas Rule of Civil Procedure 166b(3)(d) makes undiscoverable

[C]ommunications prepared by or for experts, and other discoverable communications, between agents or representatives or the employees of a party and that party's agents, representatives or employees, when made subsequent to the occurrence or transaction upon which the suit is based, and in anticipation of the prosecution or defense of the claims made a part of the pending litigation.

██ The investigative privilege can be invoked where the documents sought to be protected are prepared in connection with the prosecution, defense, or investigation of the lawsuit in which the discovery is sought, or if they were prepared in the investigation of an occurrence in anticipation of litigation. *Allen v. Humphreys*, 559 S.W.2d 798, 803 (Tex.1977).

Bank of America contends the trial court did not err in ordering production, because INA did not prove the materials were privileged from discovery. Rule 166b(4) of the Texas Rules of Civil Procedure provides:

558

[A] party who seeks to exclude any matter from discovery on the basis of an exemption or immunity from discovery, must specifically plead the particular exemption or immunity from discovery relied upon and produce evidence supporting such claim in the form of affidavits or live testimony presented at a hearing requested by either the requesting or objecting party. When a party's objection concerns the discoverability of documents and is based on a specific immunity or exemption, such as attorney-client privilege or attorney work product, the party's objection may be supported by an affidavit or live testimony but, if the trial court determines that an IN CAMERA inspection of some or all of the documents is necessary, the objecting party must segregate and produce the documents. The court's order concerning the need for an inspection shall specify a reasonable time, place and manner for making the inspection.

In this case INA produced neither affidavits, nor live testimony to support its claim that the requested documents were prepared in anticipation of litigation. At oral argument in this court, counsel for INA claimed the documents themselves were the only evidence of the claimed investigative privilege. However, the record before us does not show that INA ever made that claim before the trial court or at any time prior to oral argument in this court. If only the document itself can establish a claim of privilege, an *in camera* inspection is necessary. *Nat'l Union Fire Ins. Co. v. Hoffman*, 746 S.W.2d 305, 309 (Tex.App.—Dallas 1988, original proceeding). The party claiming privilege must request an *in camera* inspection and tender any disputed document to the trial court. *Peeples v. Hon. Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex. 1985). If the party resisting discovery fails to tender the documents, the claim of privilege is waived. *Id.*

In this case, INA failed to tender the documents in question to the court or the Master for an *in camera* inspection. INA stated, in a memorandum to the court, that it was "prepared to tender" the requested documents, but our record reflects no such tender. Further, INA failed to produce evidence in the form of live testimony or sworn affidavits to prove its claim that the requested documents were prepared in anticipation of litigation. By failing to produce any evidence of its privilege, INA waived its claim of privilege.

The trial court did not abuse its discretion in ordering the documents produced. The petition for writ of mandamus is denied.